UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

EDUARDO SANTA,                          :
          Plaintiff,                    :
                                        :
       v.                               :        CA 11-162 M
                                        :
MICHAEL J. ASTRUE,                      :
COMMISSIONER OF SOCIAL SECURITY,  :
          Defendant.                    :

## REPORT AND RECOMMENDATION

David L. Martin, United States Magistrate Judge

This matter is before the Court on the request of Plaintiff Eduardo Santa ("Plaintiff") for judicial review of the decision of the Commissioner of Social Security ("the Commissioner"), denying disability insurance benefits ("DIB") and Supplemental Security Income ("SSI"), under §§ 205(g) and 1631(c)(3) of the Social Security Act, as amended, 42 U.S.C. §§ 405(g) and 1383(c)(3) ("the Act"). Plaintiff has filed a motion to reverse the decision of the Commissioner. See Plaintiff's Motion to Reverse the Decision of the Commissioner (Docket ("Dkt.") #11) ("Motion to Reverse"). Defendant Michael J. Astrue ("Defendant") has filed a motion for an order affirming the Commissioner's decision. See Defendant's Motion for an Order Affirming the Decision of the Commissioner (Dkt. #13) ("Motion to Affirm").

This matter has been referred to me for preliminary review, findings, and recommended disposition pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons set forth herein, I find that the

Commissioner's determination that Plaintiff is not disabled is supported by substantial evidence in the record and is legally correct.  Accordingly, based on the following analysis, I recommend that Defendant's Motion to Affirm be granted and that Plaintiff's Motion to Reverse be denied.

### Facts and Travel

Plaintiff was born in 1966 and was forty-two years old as of the alleged onset date of his disability.  (Record ("R.") at 19, 117)  He has a high school education,[1] is able to communicate in English, and has past relevant work experience as an assistant manager and customer service representative at a bank, a cook, and office worker for a temporary agency.  (R. at 19, 165, 167)

Plaintiff filed an application for DIB on October 31, 2008, (R. at 126-28), alleging disability beginning on June 6, 2008, due to his HIV positive diagnosis, kidney disease, depression, idiopathic thrombocytopenic purpura,[2] sudden drop in platelets, high blood pressure, cholesterol, migraines, anxiety, and muscle pain, (R. at 166).  Plaintiff later amended his onset date to October 28, 2008, at his hearing.  (R. at 14, 26)  Plaintiff also filed an application for SSI on November 13, 2008.  (R. at 117-23) These applications were denied initially on April 8, 2009, (R. at

---

[1] Plaintiff also completed one year of college.  (R. at 172)

[2] Idiopathic thrombocytopenic purpura is a blood-clotting disorder that can lead to easy or excessive bruising and bleeding.

2

11, 52-55), and on reconsideration on August 18, 2009, (R. at 56-61).  Plaintiff then requested a hearing before an administrative law judge ("ALJ").  (R. at 11, 63-64)  A hearing was held on October 27, 2010, at which Plaintiff, represented by counsel, appeared and testified, as did an impartial medical expert ("ME") and an impartial vocational expert ("VE").  (R. at 11, 21-45)

On November 9, 2010, the ALJ issued a decision finding that Plaintiff was not disabled within the meaning of the Act.  (R. at 11-20)  The Decision Review Board selected the ALJ's decision for review, but did not complete its review within the ninety days allotted for such review, thus rendering the ALJ's decision the final decision of the Commissioner.  (R. at 1-3)  Thereafter, Plaintiff filed this action for judicial review.

## Issue

The issue for determination is whether the decision of the Commissioner that Plaintiff is not disabled within the meaning of the Act, as amended, is supported by substantial evidence in the record and is free of legal error.

## Standard of Review

Pursuant to the statute governing review, the Court is empowered "to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."  42 U.S.C. § 405(g).  The Court's role

in reviewing the Commissioner's decision is limited.  Brown v.
Apfel, 71 F.Supp.2d 28, 30 (D.R.I. 1999).  Although questions of
law are reviewed de novo, the Commissioner's findings of fact, if
supported by substantial evidence in the record,[3] are conclusive.
Id. (citing 42 U.S.C. § 405(g)).  The determination of
substantiality is based upon an evaluation of the record as a
whole.  Id. (citing Irlanda Ortiz v. Sec'y of Health & Human
Servs., 955 F.2d 765, 769 (1st Cir. 1991)("We must uphold the
[Commissioner's] findings ... if a reasonable mind, reviewing the
evidence in the record as a whole, could accept it as adequate to
support his conclusion.")(second alteration in original)).  The
Court does not reinterpret the evidence or otherwise substitute its
own judgment for that of the Commissioner.  Id. at 30-31 (citing
Colon v. Sec'y of Health & Human Servs., 877 F.2d 148, 153 (1st Cir.
1989)).  "Indeed, the resolution of conflicts in the evidence is
for the Commissioner, not the courts." Id. at 31 (citing Rodriquez
v. Sec'y of Health & Human Servs., 647 F.2d 218, 222 (1st Cir. 1981)
(citing Richardson v. Perales, 402 U.S. 389, 399, 91 S.Ct. 1420
(1971))).

---

[3] The Supreme Court has defined substantial evidence as "more than
a mere scintilla.  It means such relevant evidence as a reasonable mind
might accept as adequate to support a conclusion."  Richardson v.
Perales, 402 U.S. 389, 401, 91 S.Ct. 1420 (1971)(quoting Consolidated
Edison Co. v. NLRB, 305 U.S. 197, 229, 59 S.Ct. 206 (1938)); see also
Brown v. Apfel, 71 F.Supp.2d 28, 30 (D.R.I. 1999)(quoting Richardson v.
Perales, 402 U.S. at 401).

**Law**

To qualify for DIB, a claimant must meet certain insured status requirements,[4] be younger than 65 years of age, file an application for benefits, and be under a disability as defined by the Act.  See 42 U.S.C. § 423(a).  An individual is eligible to receive SSI if he is aged, blind, or disabled and meets certain income requirements.  See 42 U.S.C. § 1382(a).

The Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months ...."  42 U.S.C. 423(d)(1)(A).  A claimant's impairment must be of such severity that he is unable to perform his previous work or any other kind of substantial gainful employment which exists in the national economy.  See 42 U.S.C. § 423(d)(2)(A).  "An impairment or combination of impairments is not severe if it does not significantly limit [a claimant's] physical or mental ability to do basic work activities."[5]   20 C.F.R. §§ 404.1521(a) (2011)[6],

---

[4] The ALJ found that Plaintiff met the insured status requirements of the Act through December 31, 2013.  (R. at 13)

[5] The regulations describe "basic work activities" as "the abilities and aptitudes necessary to do most jobs."  20 C.F.R. §§ 404.1521(b), 416.921(b) (2011).  Examples of these include:

  (1)  Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling;
  (2)  Capacities for seeing, hearing, and speaking;

416.921(a) (2011).[7]  A claimant's complaints alone cannot provide a basis for entitlement when they are not supported by medical evidence.  See Avery v. Sec'y of Health & Human Servs., 797 F.2d 19, 20-21 (1st Cir. 1986); 20 C.F.R. § 404.1529(a) (2011).

The Social Security regulations prescribe a five step inquiry for use in determining whether a claimant is disabled.  See 20 C.F.R. § 404.1520(a) (2011); see also Bowen v. Yuckert, 482 U.S. 137, 140-42, 107 S.Ct. 2287, 2291 (1987); Seavey v. Barnhart, 276 F.3d 1, 5 (1st Cir. 2001).  Pursuant to that scheme, the Commissioner must determine sequentially: (1) whether the claimant is presently engaged in substantial gainful work activity; (2) whether he has a severe impairment; (3) whether his impairment meets or equals one of the Commissioner's listed impairments; (4) whether he is able to perform his past relevant work; and (5)

---

(3)  Understanding, carrying out, and remembering simple instructions;
(4)  Use of judgment;
(5)  Responding appropriately to supervision, co-workers and usual work situations; and
(6)  Dealing with changes in a routine work setting.

Id.

[6] On March 26, 2012, the text of certain sections of the C.F.R. changed.  For example, the former § 1527(d)(1)-(6) has become § 1527(c)(1)-(6).  The Court uses the format and text of the C.F.R. as it existed when Plaintiff filed his Complaint.

[7] The Social Security Administration ("SSA") has promulgated identical sets of regulations governing eligibility for DIB and SSI.  See McDonald v. Sec'y of Health & Human Servs., 795 F.2d 1118, 1120 n.1 (1st Cir. 1986).  For simplicity, the Court hereafter will cite to one set of regulations only.  See id.

whether he remains capable of performing any work within the economy. <u>See</u> 20 C.F.R. § 404.1520(b)-(g). The evaluation may be terminated at any step. <u>See</u> <u>Seavey v. Barnhart</u>, 276 F.3d at 4. "The applicant has the burden of production and proof at the first four steps of the process. If the applicant has met his . . . burden at the first four steps, the Commissioner then has the burden at Step 5 of coming forward with evidence of specific jobs in the national economy that the applicant can still perform." <u>Freeman v. Barnhart</u>, 274 F.3d 606, 608 (1st Cir. 2001).

## ALJ's Decision

Following the familiar sequential analysis, the ALJ in the instant case made the following findings: that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2013, (R. at 13); that he had not engaged in substantial gainful activity since October 28, 2008, his amended onset date, (R. at 14); that Plaintiff's HIV, depression and anxiety were severe impairments, (<u>id.</u>); that Plaintiff did not have an impairment or combination of impairments which met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1, (<u>id.</u>); that he had the residual functional capacity ("RFC") to perform light work, with the ability to lift/carry up to 20 pounds occasionally and 10 pounds frequently, (R. at 15); that Plaintiff could sit, stand, and walk for six hours out of an eight-hour workday, (<u>id.</u>); that Plaintiff was able to

frequently use stairs, balance, stoop, kneel, and crouch and occasionally use ladders, ropes, and scaffolds and crawl, (id.); that he must avoid concentrated exposure to irritants and moderate exposure to hazards, (id.); and that work would be limited to simple routine and repetitive tasks in a work environment free from fast-paced production involving only simple work-related decisions with few, if any, work place changes, (id.); that Plaintiff's medically determinable impairments could reasonably be expected to have caused the alleged symptoms, but that his statements concerning the intensity, persistence, and limiting effects of these symptoms were not credible to the extent they were inconsistent with the RFC assessment, (R. at 16); that he was unable to perform any past relevant work, (R. at 19); that Plaintiff was born in 1966 and was 42 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date, (id.); that Plaintiff had at least a high school education and was able to communicate in English, (id.); that transferability of job skills was not material to the determination of disability because using the Medical-Vocational Rules as a framework supported a finding of "not disabled" whether or not Plaintiff had transferable job skills, (id.); that, considering Plaintiff's age, education, work experience, and RFC, there were jobs existing in significant numbers in the national economy which Plaintiff could perform, (id.); and that, therefore, he was not under a disability,

8

as defined in the Act, from October 28, 2008, through the date of
the ALJ's decision, (R. at 20).

## Error Claimed

Plaintiff alleges that the ALJ erred by failing to give
appropriate weight to the treating source opinions of Alix
Stockwood, L.I.C.S.W.[8] ("Ms. Stockwood"), Ank Nijhawan, M.D. ("Dr.
Nijhawan"), and Josiah D. Rich, M.D. ("Dr. Rich"). See Plaintiff's
Memorandum in Support of his Motion to Reverse the Decision of the
Commissioner ("Plaintiff's Mem.") at 9-11.

## Discussion

Plaintiff's single claim of error is that the ALJ failed to
evaluate the opinions of Plaintiff's treating sources, namely Ms.
Stockwood, Dr. Nijhawan, and Dr. Rich, in accordance with 20 C.F.R.
§ 404.1527(d)(2011)[9]. See Plaintiff's Mem. at 9-11. Specifically,

---

[8] L.I.C.S.W. means Licensed Independent Clinical Social Worker.

[9] Evaluation of opinion evidence is governed by 20 C.F.R. §
404.1527, which provides in relevant part that:

  Generally, we give more weight to opinions from your treating
  sources, since these sources are likely to be the medical
  professionals most able to provide a detailed, longitudinal
  picture of your medical impairment(s) and may bring a unique
  perspective to the medical evidence that cannot be obtained
  from the objective medical findings alone or from reports of
  individual examinations, such as consultative examinations or
  brief hospitalizations.  If we find that a treating source's
  opinion on the issue(s) of the nature and severity of your
  impairment(s) is well-supported by medically acceptable
  clinical and laboratory diagnostic techniques and is not
  inconsistent with the other substantial evidence in your case
  record, we will give it controlling weight. When we do not give
  the treating source's opinion controlling weight, we apply the
  factors listed in paragraphs (d)(2)(i) and (d)(2)(ii) of this

Plaintiff challenges the ALJ's evaluation of his treating sources' opinions regarding his non-exertional impairments.   See id. at 9.

The ALJ found Plaintiff's depression and anxiety[10] to be severe impairments.  (R. at 14)  In finding Plaintiff not disabled, (R. at 20), the ALJ found most probative the opinions provided by state agency consultants Thomas Bennett, M.D. ("Dr. Bennett"), and Michael Slavit, Ph.D. ("Dr. Slavit"), that Plaintiff was capable of light, unskilled work, (R. at 17, 300-25).  The ALJ provided the following rationale for his assignment of weight to various medical sources in the record:

> Generally, more weight is give[n] to the opinions of treating sources, even "controlling weight," if they are well supported by medically acceptable clinical and laboratory diagnostic techniques and not inconsistent with other substantial evidence.  The Commissioner is responsible for making the determination about whether an individual meets the statutory definition of "disability" and a statement by a medical source that an individual is "disabled" or "unable to work" does not mean that he/she will be found disabled.  Here, the medical evidence shows

---

section, as well as the factors in paragraphs (d)(3) through (d)(6) of this section in determining the weight to give the opinion. We will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion.

404.1527(d)(2) (2011).   In evaluating medical opinions, an ALJ is directed to consider the existence of an examining relationship, the existence of a treating relationship, the length, nature, and extent thereof, the supportability of an opinion, the consistency of an opinion with the record as a whole, the specialization of the source, and any other factors which the claimant brings to the adjudicator's attention. See 20 C.F.R. § 404.1527(d)(1)-(6).

[10] Plaintiff was also diagnosed with Post Traumatic Stress Disorder ("PTSD") due to his experience of domestic abuse at the hands of his partner.  (R. at 269, 289, 631, 633)

that the claimant's condition has improved with
medication.  The undersigned has considered the treating
source opinions and finds that the state agency
assessment is more consistent with the claimant's level
of functioning based on substantial evidence.

(R. at 18-19)(emphasis in original)(internal citations omitted).

Plaintiff first argues that the ALJ's statement "that the
[Plaintiff]'s condition has improved with medication," (R. at 19),
is erroneous.  See Plaintiff's Mem. at 10.  The ALJ noted that in
June of 2009 Plaintiff had reported improvement in symptoms, (R. at
17), and that in August of 2009 his symptoms had stabilized, (id.).
The record supports the ALJ's statements.  Terri Belanger, MS,
P.C.N.S.[11] ("Nurse Belanger"), recorded on June 4, 2009, that
Plaintiff had "completed the depression scale, with great
improvement of symptoms noted ...."  (R. at 606)  The same note
reflects that Plaintiff "rate[d] his depression as a 0/10, anxiety
1/10 over the past week."  (Id.)  In an August 4, 2009, note, Nurse
Belanger commented that Plaintiff's "symptoms have stabilized."
(R. at 609)

Addressing only the first of these notes, Plaintiff posits
that while the "[June 4, 2009,] visit may very well mark a marginal
improvement in his condition," Plaintiff's Mem. at 10, his Global
Assessment of Functioning ("GAF") scores[12] of 47 on April 15, 2009,

---

[11] P.C.N.S. means Psychiatric Clinical Nurse Specialist.

[12] The Global Assessment of Functioning ("GAF") "is a subjective
determination based on a scale of 100 to 1 of 'the clinician's judgment
of the individual's overall level of functioning.'"  Langley v. Barnhart,
373 F.3d 1116, 1123 n.3 (10th Cir. 2004)(quoting Diagnostic and

(R. at 574), and 50 on June 4 2009, (R. at 606), are "indicative of severe psychological difficulties inconsistent with work activity," Plaintiff's Mem. at 10.   To the extent that Plaintiff is arguing that the record does not support the ALJ's finding that Plaintiff's condition had improved, the Court is not persuaded.   As already noted, the ALJ did not base his finding that Plaintiff's condition had improved solely upon Nurse Belanger's treatment note dated June 4, 2009.   He also cited her August 4, 2009, report which indicated that Plaintiff's symptoms had stabilized on Prozac and Ambien.   (R. at 17, 609)

The record also provides additional support for the ALJ's finding that Plaintiff's condition had improved.   Plaintiff's next visit to Nurse Belanger after the June 4, 2009, "great improvement of symptoms," (R. at 606), assessment was on July 7, 2009, (R. at 608).   At that time he reported "little change of symptoms," (id.), and "rate[d] his depression as a 1/10, anxiety 4/10 over the past week," (id.).   He advised that he had been walking three days during the past week and had attended a cookout at his mother's home.   (Id.)   Plaintiff also showed "great improvement of symptoms," (R. at 614), on his November 12, 2009, visit to Nurse Belanger, (id.).   Plaintiff reported that his mood "has been fine,"

_____

Statistical Manual of Mental Disorders (Text Revision 4th ed. 2000) ("DSM-IV-TR") at 32); see also Lopez v. Barnhart, 78 Fed. Appx. 675, 677 (10th Cir. 2003)("The GAF scale is used by clinicians to report an individual's overall level of functioning.").   The GAF "[c]onsider[s] psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness."   DSM-IV-TR at 34.

(id.), and that his Trazodone was working very well to help him to sleep, (id.). Nurse Belanger noted that Plaintiff was tolerating his medication well and that "he ha[d] very few symptoms." (Id.) Plaintiff rated his "depression 0/10, anxiety 0/10 over the past week." (Id.) It was noted that he had walked his sister's dog three days during the past week. (Id.) Plaintiff's condition was similar when he saw Nurse Belanger on December 10, 2009, with few symptoms being noted. (R. at 615) He again reported that his mood "has been fine ...," (id.), and that he had been walking his sister's dog three or four days during the previous week, (id.).

While some treatment notes reflect increases in Plaintiff's anxiety level, the increases appear to be related to matters such as eviction from his apartment, (R. at 612), calls from his attorneys regarding his lawsuit over his termination from his former employer,[13] (R. at 615), or waiting to hear back about unemployment benefits, (R. at 608).[14] Thus, these temporary

---

[13] At the time, Plaintiff was involved in a lawsuit regarding wrongful termination from his employment due to informing his employer about his HIV. (R. at 269)

[14] Plaintiff reported worsening symptoms on October 29, 2009, and rated both his depression and anxiety as "7/10" during the past week. (R. at 613) However, he had run out of Prozac the previous week, and he had been waiting for a settlement in his lawsuit which caused him to be "very frustrated." (Id.) The Court also notes that Plaintiff may have contributed to his increased symptoms by missing treatment appointments. On February 8, 2010, a case manager at Family Service of Rhode Island noted that Plaintiff "can isolate himself & this triggers succession of missed appts & accel depressed states." (R. at 619) On June 4, 2009, Nurse Belanger noted that this was Plaintiff's first appointment since April 15, 2009, as he "notes he has been sick." (R. at 606) On July 3, 2009, Plaintiff did not come in for his appointment with Nurse Belanger. (R. at 607) Plaintiff's noncompliance with prescribed treatment

increases in anxiety do not render the ALJ's finding of improvement erroneous.

Plaintiff's argument concerning his GAF scores is also unpersuasive. The ALJ discussed Plaintiff's GAF score of 47 and thereby also implicitly discussed Plaintiff's GAF score of 50. (R. at 17, 574, 606) The ALJ recognized that a GAF score between 41 and 50 represents severe symptoms or any serious impairment in social, occupational, or school functioning.[15] (R. at 17, n.2) However, the ALJ also noted that a GAF score between 41 and 50 "alone does not necessarily mean that an individual has disabling impairments." (Id.)(citing Robert v. Astrue, 688 F.Supp.2d 29, 40 (D. Mass. 2010)("Although a score of 50 indicates serious symptoms that could suggest an inability to hold a job, it does not necessarily mean that a person is unable to meet the basic mental demands of competitive remunerative unskilled work.")); see also Nickerson v. Astrue, No. 1:11-cv-87-GZS, 2012 WL 975641, at *3 (D. Me. March 21, 2012)("[A] GAF score, standing alone, does not necessarily indicate an inability to work or to perform specific work-related functions.")(quoting LaFontaine v. Astrue, No. 1:10-cv-527-JAW, 2011 WL 4459197, at *4 (D. Me. Sept. 25,

---

undermines his application for benefits. See Social Security Ruling ("SSR") 82-59, 1982 WL 31384 (S.S.A.).

[15] A GAF score between 41 and 50 is indicative of "**[s]erious symptoms** (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) **OR any serious impairment in social, occupational, or school functioning** (e.g. no friends, unable to keep a job)." DSM-IV-TR at 34.

2011)(rec. dec., aff'd Oct. 13, 2011)).  The ALJ also stated that he was "aware that the medical record contains various GAF scores, some of which are indicative of serious limitations, however, the [ALJ] can choose to rely on DDS[16] reports factoring a GAF opinion of a treating psychiatrist," (R. at 17 n.3) (citing Cough v. Barnhart, No. 03-57-B-W, 2004 WL 390950, at *3 (D. Me. Mar. 3, 2004)).  Finally, the ALJ stated that the "functioning scores in the record are inconsistent with [Plaintiff's] observed level of functioning and cannot be reliable."  (R. at 17)  The record supports this observation.[17]

Plaintiff also contends that the ALJ used the rationale that Plaintiff had improved on medication as a basis for rejecting Ms. Stockwood's opinion and that this was error.  Plaintiff's Mem. at 10; see also (R. at 18).  The Court finds no error in the ALJ's evaluation of Ms. Stockwood's opinion.  The ALJ acknowledged Ms. Stockwood's assessment that Plaintiff had moderately severe to

---

[16] DDS means Disability Determination Services.

[17] The Court notes that the GAF scores of 50 which appear throughout Nurse Belanger's treatment notes, (R. at 606, 608-09, 612-15), do not correspond to the symptoms being reported and recorded.  For example, her October 29, 2009, note reflects that Plaintiff reported a worsening of symptoms and that he rated both his depression and anxiety as "7/10." (R. at 613)  The next treatment note dated November 12, 2009, (R. at 614), records a great improvement of symptoms and states that Plaintiff rated both his depression and anxiety as "0/10" during the past week. (Id.)  Nurse Belanger observed that Plaintiff "ha[d] very few symptoms." (Id.)  Notwithstanding this great improvement (which is totally incompatible with a GAF score of 50) there is no change in the GAF score. The Court concludes that the GAF score was not being adjusted by Nurse Belanger each time she wrote a treatment note.

severe limitations in her ability to respond appropriately to supervisors, coworkers, and customary work pressures and moderately severe limitations in understanding instructions.[18]  (R. at 18, 298-99)  He found Ms. Stockwood's opinion to be inconsistent with the medical evidence of record, including her own observations and conclusions.[19]  (R. at 18)

The Court finds the ALJ's assignment of weight to Ms. Stockwood's opinions to be supported by substantial evidence for the following reasons.  First, Ms. Stockwood had only been seeing Plaintiff for three weeks.  (R. at 298-99)  Her first contact with him was on March 31, 2009.  (R. at 294)

---

[18] At his initial visit with Ms. Stockwood, Plaintiff reported symptoms of depression and anxiety related to serious medical issues, financial and housing worries, and other traumatic events in his life. (R. at 294)  Plaintiff's symptoms included fatigue, insomnia, poor appetite, weight loss, lack of interest in daily activities, social isolation, feelings of helplessness and hopelessness, severe anxiety with some panic, dizziness, racing heart, and some suicidal ideation without a plan. (Id.)  Ms. Stockwood remarked upon Plaintiff's "long history of depression," stating that his depression "ha[d] been exacerbated by recent events, traumas in his life, and being at risk of losing his housing due to lack of income," his "high level of anxiety from [PTSD] and worry about being homeless," and history of suicide attempt and hospitalization. (Id.)  Plaintiff indicated that he could not work due to his pain stemming from HIV, as well as his depression and anxiety. (Id.)  Ms. Stockwood diagnosed Plaintiff with major depressive disorder and PTSD.  (R. at 295)  She further noted that Plaintiff's health was "poor" and that he was "severely limited by [symptoms] of depression." (R. at 297)  She recorded the majority of Plaintiff's symptoms as ranging from moderately severe to severe.  (R. at 298-99)

[19] In order for an opinion to be afforded controlling weight, the following factors must be present: 1) the opinion must come from a treating source; 2) the opinion must be a medical opinion; 3) the opinion must be well-supported by medically acceptable clinical and laboratory diagnostic techniques; and 4) the opinion must be not inconsistent with other substantial evidence in the record.  SSR 96-2p, 1996 WL 374188, at *2 (S.S.A.).

Second, the ALJ is correct in stating that her opinion is inconsistent with her own observations and conclusions. (R. at 18) On April 7, 2009, Ms. Stockwood initially assigned to Plaintiff a GAF score of 60. (R. at 573) On April 14, 2009, she assigned him a GAF of 55. (R. at 605) Both of these scores indicate moderate symptoms.[20]   See DSM-IV-TR at 34.   However, in her letter to Plaintiff's attorneys dated just one week later, Ms. Stockwood stated that Plaintiff presented on March 31, 2009, with severe symptoms of depression and anxiety.   (R. at 294)   As Ms. Stockwood's assessments appear to be somewhat inconsistent, the Court agrees with the ALJ's finding that they are entitled to less weight.[21]   The Court again notes that conflicts in the evidence are for the Commissioner to resolve, Brown v. Apfel, 71 F.Supp.2d at 31, and that in appropriate circumstances, opinions from State agency medical and psychological consultants may be entitled to greater weight than the opinions of treating or examining sources, see SSR 96-6p, 1996 WL 374180, at *3; see also Keating v. Sec'y of Health and Human Servs., 848 F.2d at 275 n.1 (1st Cir. 1988).

Third, Ms. Stockwood's opinion was based on what Plaintiff

---

[20] A GAF score between 51-60 is indicative of "**[m]oderate symptoms** (e.g., flat affect and circumstantial speech, occasional panic attacks) **OR moderate difficulty in social, occupational, or school functioning** (e.g., few friends, conflicts with peers or co-workers)." DSM-IV-TR at 34.

[21] A glaring inconsistency in Ms. Stockwood's assessments is the fact that on April 14, 2009, she recorded that Plaintiff's highest GAF in the past year was 55, (R. at 605), when just a week earlier she had assessed him as having a GAF of 60, (R. at 573).

told her, and there is reason to question the accuracy of at least some of what Plaintiff related to her.  Specifically, in her letter to Plaintiff's attorneys, she wrote that Plaintiff "states he cannot work, as he is constantly in pain from a serious blood disease associated with his HIV."  (R. at 294)  Yet, less than a month earlier Dr. Nijhawan, Plaintiff's treating immunologist, completed a pain and fatigue questionnaire in which he stated that Plaintiff did not suffer from significant pain.  (R. at 276)

Fourth, Ms. Stockwood is a licensed social worker.  The ALJ was not required to give controlling weight or even significant weight to the opinion provided by Plaintiff's social worker.  The list of "acceptable medical sources" includes licensed physicians, licensed or certified psychologists, licensed optometrists, licensed podiatrists, and qualified speech-language pathologists.[22] 20 C.F.R. § 404.1513(a)(1)-(5) (2011).  Social workers may fit the category of "other sources"[23] which may provide evidence of a medical impairment but the ALJ was not required to give a social worker's opinion controlling weight.[24]  20 C.F.R. § 404.1513(d)(1).

---

[22] "Acceptable medical sources" are licensed physicians, licensed or certified psychologists, licensed optometrists, licensed podiatrists, and qualified speech-language pathologists.  20 C.F.R. § 404.1513(a)(1)-(5)(2011); see also SSR 06-03p, 2006 WL 2329939, at *1.

[23] "Other sources" include, but are not limited to: nurse practitioners, physician assistants, chiropractors, and therapists.  20 C.F.R. § 404.1513(d)(1); see also SSR 06-03p, 2006 WL 2329939, at *2.

[24] SSR 06-3p clarifies how "opinions from sources who are not 'acceptable medical sources' ...," SSR 06-3p, 2006 WL 2329939, at *1 (S.S.A.), are to be considered, see id.  "The evaluation of an opinion

Therefore, the Court concludes the ALJ properly assessed Ms. Stockwood's opinion.

Next, Plaintiff contends that the ALJ "fail[ed] to provide any discussion or evaluation of the opinion of Dr. Nijhawan regarding [Plaintiff]'s psychological impairments." Plaintiff's Mem. at 10. Specifically, Plaintiff asserts that while the ALJ discussed Dr. Nijhawan's opinion regarding his physical condition and cited to the evidence of record addressing his physical impairments, (R. at 291-93), the ALJ "appear[ed] to overlook the doctor's opinion regarding [Plaintiff]'s psychological condition ...," (R. at 274-76). Plaintiff's Mem. at 10.

In a Disability Questionnaire dated March 23, 2009, Dr. Nijhawan indicated that Plaintiff had diagnoses of HIV, hypertension, HIV-associated thrombocytopenia, other physical ailments, and anxiety and depression. (R. at 274) Dr. Nijhawan listed Plaintiff's symptoms as, *inter alia*, insomnia, fatigue, anxiety, headache, nausea, and muscle pain. (Id.) She further indicated that Plaintiff did not suffer from a physical impairment which significantly limited his ability to engage in substantial, gainful activity in a competitive setting on a full-time, ongoing basis. (Id.) However, elsewhere in the Questionnaire , she opined that Plaintiff could not sustain competitive employment on a full-

from a medical source who is not an 'acceptable medical source' depends on the particular facts of each case." Id. at *5.

19

time, ongoing basis due to his emotional impairments.  (Id.)  Dr. Nijhawan later indicated, however, that it was Plaintiff's fatigue, which was a side effect from his medication for depression, that was causing moderately severe limitations in Plaintiff's ability to concentrate, keep pace, and be productive in a competitive work setting on a sustained basis.  (R. at 276)

Several weeks later on April 13, 2009, Dr. Nijhawan completed another questionnaire in which she stated that Plaintiff's depression and anxiety were symptoms related to his HIV.  (R. at 293)  Dr. Nijhawan noted Plaintiff's complaints regarding difficulties with daily activities and social functioning due to his HIV.  (R. at 292)  Dr. Nijhawan concluded that Plaintiff could not sustain competitive employment on a full-time, ongoing basis.  (R. at 293)

The ALJ stated the following rationale for finding Dr. Nijhawan's opinion to be inconsistent with the medical evidence and thus less probative:

> the assessment refers to the claimant having moderately severe limitations in overall occupational functioning. This limitation is inconsistent with the physician's own records showing that the claimant's condition had improved and stabilized.  Dr. Nijhawan also opines that the claimant is unable to sustain employment.  The undersigned cannot accept an opinion on an individual's ability to work as this is an issue reserved for the Commissioner.

(R. at 18)(footnote omitted).

The Court finds no error in the ALJ's evaluation of Dr.

Nijhawan's opinion.  Although the ALJ cited to Dr. Nijhawan's April 13, 2009, AIDS/HIV Questionnaire which mainly addressed Plaintiff's physical impairments, (R. at 18, 291-93), this same assessment contained Dr. Nijhawan's consideration of Plaintiff's psychological condition.  In the questionnaire, Dr. Nijhawan stated that she believed Plaintiff could not sustain competitive employment on a full-time, ongoing basis due to "the psychological stress of his new diagnosis & side effects of his medications [which] limit his ability to work full time." (R. at 293)  Dr. Nijhawan additionally indicated that Plaintiff complained of "significant fatigue and/or depression which would result in a moderately severe limitation in concentration, persistence and pace in a competitive work setting," (R. at 292), and also of "significantly decreased frustration tolerance such that he[] would experience moderately severe limitations in his[] ability to respond appropriately to customary work stress," (id.).  Thus, contrary to Plaintiff's suggestion, see Plaintiff's Mem. at 10, the assessment of Dr. Nijhawan which the ALJ discussed, (R. at 18), was not limited to Plaintiff's physical condition, (R. at 291-93).

Furthermore, there is no evidence that the ALJ failed to consider Dr. Nijhawan's March 23, 2009, assessment regarding Plaintiff's psychological impairments.  (R. at 274-76)  In addition, the March 23rd assessment, (R. at 274-75), is similar to the April 13, 2009, assessment, (R. at 291-93).  The difference is

21

that Dr. Nijhawan explicitly indicated in the former that Plaintiff suffered from an emotional impairment which significantly limited his ability to engage in substantial, gainful activity in a competitive setting on a full-time, ongoing basis.  (R. at 274) However, Dr. Nijhawan essentially expressed the same opinion in her handwritten rationale which appears in the April 13th assessment. (R. at 293)

Furthermore, Dr. Nijhawan is a member of the Department of Immunology at Miriam Hospital.  (R. at 274)  As she specialized in an area other than mental health, her opinion regarding his emotional impairments merits less weight.  See 20 § C.F.R. 404.1527(d)(5) ("We generally give more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist.").

The record also substantially supports the ALJ's finding that Dr. Nijhawan's opinion that Plaintiff had moderately severe limitations in overall occupational functioning, (R. at 18, 291-93), was inconsistent with her own observations that Plaintiff's condition had improved and stabilized, (R. at 18, 260-68).  A February 2, 2009, treatment note from Miriam Hospital signed by Jorge Castillo, M.D. ("Dr. Castillo"), a colleague of Dr. Nijhawan, states: "We have been encouraging the patient to go back to work since his platelet counts have been greatly stable for the last

22

several weeks." (R. at 268)  The previous month Dr. Nijhawan had noted that Plaintiff "plans to look for a job, doing some part-time work, possibly at McDonald's or Burger King, and also considering some retraining in computer skills or other skills." (R. at 266) It also bears noting that Dr. Castillo wrote on August 28, 2010, "it is safe to say that he has responded beautifully to his treatment of his human immunodeficiency virus." (R. at 524)

Finally, although the ALJ only cited to Dr. Nijhawan's April 13, 2009, assessment, (R. at 18), the ALJ stated in his decision that he had carefully considered the entire record. (R. at 15)  An ALJ is not required to address every piece of evidence in the record.  See Rasmussen-Scholter v. Barnhart, No. Civ.A. 03-11889-DPW, 2004 WL 1932776, at *10 (D. Mass. 2004)(noting that "the ALJ need not directly address every piece of evidence in the administrative record")(citing Rodriguez v. Sec'y of Health & Human Servs., 915 F.2d 1557, 1990 WL 152336, at *1 (1st Cir. Sept. 11, 1990)(per curiam, table decision)("An ALJ is not required to expressly refer to each document in the record, piece-by-piece"); NLRB v. Beverly Enters.-Mass., Inc., 174 F.3d 13, 26 (1st Cir. 1999) (noting in labor context that "[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted")(alteration in original); accord Diaz v. Chater, 55 F.3d at 308 (7th Cir. 1995)(noting that "an ALJ need not provide a complete written evaluation of every piece of

testimony and evidence"); <u>Black v. Apfel</u>, 143 F.3d 383, 386 (8th Cir. 1998)(noting that "an ALJ is not required to discuss every piece of evidence submitted"). Therefore, the Court finds no error in the ALJ's evaluation of Dr. Nijhawan's opinion.

Plaintiff's final argument is that the ALJ failed to evaluate Dr. Rich's opinion regarding Plaintiff's psychological impairments. Plaintiff's Mem. at 10. Specifically, Plaintiff alleges that the ALJ discussed Dr. Rich's opinion dated October 25, 2010, regarding Plaintiff's HIV, (R. at 622-28), but did not consider Dr. Rich's assessment, completed that same day, regarding Plaintiff's psychological condition, (R. at 642-43). <u>Id.</u> In support of his argument, Plaintiff finds the following discussion provided by the ALJ in his evaluation of Dr. Rich to be "solely based on Dr. Rich's opinion of claimant's physical condition:"

> Dr. Rich opined that the claimant is unable to sustain employment, however, the records indicate that his physical condition is stabilized with medications, he has a non-detectable viral load and his blood counts remained stable.

(R. at 18); <u>see also</u> Plaintiff's Mem. at 11.

Plaintiff's argument is without merit. The ALJ in his decision specifically cited to both assessments addressing Plaintiff's HIV and mental impairments, citing to "Exhibits 29F and 31F."[25] (R. at 18, 622-28, 642-43) Just because the ALJ quoted

---

[25] The ALJ stated in his decision that he "has also considered the assessment of Josiah Rich, MD and finds that it is inconsistent with the physician's own treating records (Exhibits 29F and 31F)." (R. at 18)

from one assessment does not mean he did not evaluate the other. See Rasmussen-Scholter v. Barnhart, 2004 WL 1932776, at *10; Rodriquez v. Sec'y of Health & Human Servs., 1990 WL 152336, at *1; NLRB v. Beverly Enters.-Mass., Inc., 174 F.3d at 26; accord Black v. Apfel, 143 F.3d at 386 (noting that "an ALJ is not required to discuss every piece of evidence submitted"); Diaz v. Chater, 55 F.3d at 308.

Like Dr. Nijhawan, Dr. Rich indicated in his assessment of Plaintiff's physical impairments that Plaintiff complained of "significant fatigue and/or depression which would result in a moderately severe limitation in concentration, persistence and pace in a competitive work setting," (R. at 627), and of "significantly decreased frustration tolerance such that he[] would experience moderately severe limitations in his[] ability to respond appropriately to customary work stress," (id.). Thus, Dr. Rich addressed Plaintiff's psychological impairments in this assessment which the ALJ specifically cited. (R. at 18) Also like Dr. Nijhawan, Dr. Rich is a member of the Department of Immunology at Miriam Hospital. (R. at 622) Although the Supplemental Questionnaire as to RFC form which he filled out addresses Plaintiff's psychological impairments, (R. at 642), Dr. Rich is not a mental health professional. His opinion, therefore, is entitled to less probative weight with respect to Plaintiff's psychological impairments. (R. at 642-43), see 20 § C.F.R. 404.1527(d)(5).

Thus, the ALJ's evaluation of Dr. Rich's opinion was not erroneous.

Finally, other evidence of record substantially supports the ALJ's opinion regarding Plaintiff's RFC.  State consultant Carlos Perez-Benitiez, Ph.D. ("Dr. Perez-Benitiez"), evaluated Plaintiff on February 27, 2009, for complaints of depression and anxiety. (R. at 269-73)  Dr. Perez-Benitiez diagnosed Plaintiff with major depressive disorder, single episode, mild to moderate, and PTSD, partial remission.  (R. at 271)  Dr. Perez-Benitiez assigned a GAF score of 50 to 55, indicating moderate limitations in social and occupational functioning.   (R. at 16 n.1, 272)   State agency consultant Clifford Gordon, Ed.D. ("Dr. Gordon"), completed a Psychiatric Review Technique form on April 1, 2009, and found that Plaintiff had no more than mild functional limitations.  (R. at 277-90)  Similarly a second Psychiatric Review Technique form completed by Dr. Slavit on August 13, 2009, indicates that Plaintiff had only a moderate degree of functional limitation in any area.  (R. at 318)  The Mental RFC Assessment, which Dr. Slavit performed the same day, also reflects that Plaintiff was at most only moderately limited in any of the areas evaluated.  (R. at 322-23)  Dr. Slavit concluded that "[b]ased solely on psych factors he would be limited to tasks that are not at the same time complex and time-pressured, but can sustain a 2-hr/8-hr sched[ule] at routine tasks."  (R. at 324)

The Court thus concludes that the ALJ properly evaluated the

opinions of Ms. Stockwood, Dr. Nijhawan, and Dr. Rich, and that his stated reasons for affording less weight to those opinions are supported by substantial evidence.   Accordingly, I recommend that Plaintiff's single claim of error be rejected.

### Summary

The ALJ did not err in his evaluation of the opinions of Ms. Stockwood and Drs. Nijhawan and Rich.   Accordingly, Plaintiff's claim of error should be rejected.   I so recommend.

### Conclusion

The Court finds that the ALJ's determination that Plaintiff is not disabled within the meaning of the Act is supported by substantial evidence in the record and is legally correct. Accordingly, I recommend that Defendant's Motion to Affirm be granted and that Plaintiff's Motion to Reverse be denied.

Any objections to this Report and Recommendation must be specific and must be filed with the Clerk of Court within fourteen (14) days of its receipt.   See Fed. R. Civ. P. 72(b); DRI LR Cv 72(d).   Failure to file specific objections in a timely manner constitutes waiver of the right to review by the district court and of the right to appeal the district court's decision.   See United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 605 (1st Cir. 1980).

*/s/  David L. Martin*
DAVID L. MARTIN
United States Magistrate Judge
September 17, 2012