UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| EDUARDO SANTA,<br>        Plaintiff,<br><br>v.<br><br>MICHAEL J. ASTRUE, Commissioner,<br>Social Security Administration,<br>        Defendant. | C.A. No. 11-162-M |

**MEMORANDUM AND ORDER**

JOHN J. McCONNELL, JR., U.S. District Judge.

This appeal arises from the denial of Eduardo Santa's application for Social Security Disability Insurance benefits ("SSDI") and Supplemental Security Income ("SSI"). Following the denial of his claim, Mr. Santa requested a hearing before an Administrative Law Judge ("ALJ"). The ALJ issued a decision finding that Mr. Santa was not disabled. (Tr. 11-20.)

In reaching his conclusion, the ALJ rejected the opinions of Mr. Santa's healthcare providers, including treating source Ank Nijhawan, MD, treating therapist Alix Stockwood, LICSW, treating doctor Josiah Rich, MD, and examining physician, Thamara Davis. (Tr. 18.) Instead, the ALJ relied on assessments by state agency consultants, his own interpretation of the medical evidence, and his finding that Mr. Santa's "alleged severe symptoms and disabling limitations . . . are not entirely supported by the record." (Tr. 17-19.)

The Decision Review Board selected the claim for review but later notified Mr. Santa that it did not complete its review on time. (Tr. 1.) Accordingly, the ALJ's decision denying

benefits became the Commissioner's final decision by default. *Id.* Mr. Santa subsequently filed suit in this Court. (ECF No. 1.)

**MEDICAL EVIDENCE**

At the time he filed for disability, Eduardo Santa was a 42-year-old gentleman who suffered from severe impairments due to his HIV, depression, and anxiety. (Tr. 11, 14, 19.)

Mr. Santa's three treating healthcare providers opined that Mr. Santa is disabled and precluded from work. Mr. Santa's treating doctor, Dr. Ank Nijhawan of the Department of Immunology at Miriam Hospital, stated that Mr. Santa suffers from insomnia, fatigue, anxiety, headaches, nausea, muscle pain, and fluid retention secondary to his HIV, hypertension, anxiety/depression, and other conditions. (Tr. 274-76; 291-93.) The doctor stated that Mr. Santa's medications coupled with his depression cause significant fatigue. (Tr. 276.) She went on to note that the fatigue and depression associated with his disease are significant and causes various functional limitations, including:

- "difficulties with daily activities" and "social functioning" (moderate limitations); and
- limitations with the "ability to respond appropriately to customary work stress," limitations with "concentration, persistence, and pace," and "limitations in overall occupational functioning" (moderately severe limitations).

(Tr. 292.) She noted that Mr. Santa suffers from an emotional impairment that would preclude him from ongoing substantial gainful activity on a full-time basis. (Tr. 274.)

Mr. Santa's therapist at AIDS Project Rhode Island, Alix Stockwood, LICSW, also rendered an opinion related to his psychological condition. (Tr. 294-99.) Ms. Stockwood noted that Mr. Santa had a long history of depression including an inpatient stay at Butler Hospital. (Tr. 294.) She went on to state that Mr. Santa endures "a high level of anxiety" secondary to post traumatic stress disorder, and further that his anxiety and depression are "quite debilitating,

and present a significant challenge to performing tasks of his daily functioning." *Id.* Ms. Stockwood noted that Mr. Santa's condition causes limitations in the following areas:

- his ability to "Respond appropriately to supervision" (moderate limitations);
- his "ability to relate to other people," "Restriction of Activities of Daily Living," "deterioration in personal habits," ability to "Understand, carry out and remember instructions," "Attention and Concentration in a work setting," his ability to "Respond appropriately to co-workers," as well as his ability to "Perform simple tasks" and "varied tasks" (moderately severe limitations); and
- "Social Functioning," "constriction of interests," his ability to respond appropriately "to customary work pressures," as well as his ability to "Perform complex tasks" and "repetitive tasks" (severe limitations).

(Tr. at 298-99.) Ms. Stockwood emphasized that Mr. Santa was incapable of performing full-time employment due to his emotional impairment, major depression, as well as the fatigue caused by his medications. (Tr. 549-552.)

A third treating source, Dr. Josiah Rich, M.D., diagnosed Mr. Santa with impairments that render him incapable of performing full-time work activity at any level. (Tr. 622-28, 642-43.) In addition to finding that Mr. Santa suffers from "moderately severe" fatigue, Dr. Rich noted functional limitations in the following areas:

- his "ability to relate to other people," "Activities of Daily Living," "Attention and Concentration in a work setting," as well his ability to "Perform complex tasks," "repetitive tasks," and "varied tasks" (moderate limitations);
- "Social Functioning," responding "appropriately to supervision" and "to co-workers" (moderately severe limitations); and
- responding "to customary work pressures" (severe limitations).

(Tr. 625, 642-43.)

The records of consulting psychiatrist Dr. Thamara Davis, M.D. were also introduced into the record. (Tr. 629-34.) Dr. Davis diagnosed Mr. Santa with "Major Depressive Disorder Recurrent severe" as well as HIV, high blood pressure, and kidney disease. (Tr. 633.)

3

**PROCEDURAL HISTORY**

The ALJ issued a decision on November 9, 2010 finding that Mr. Santa was not disabled under section 216(i), 223(d), or 1614(a)(3)(A) of the Social Security Act. (Tr. 20.) The ALJ found that Mr. Santa could not perform his past relevant work. (Tr. 19.) The ALJ also found that, although Mr. Santa had "severe impairments" ("HIV, depression and anxiety"), he "has the residual functional capacity to perform light work . . . limited to simple, routine, repetitive tasks in a work environment free from fast paced production involving only simple work related decisions with few if any work place changes." (Tr. 14, 15.)

Mr. Santa filed suit in this Court, and the matter was referred to a Magistrate Judge for a Report and Recommendation ("R&R"). (ECF Nos. 1, 6.) Mr. Santa filed a Motion to Reverse the Decision of the Commissioner denying him SSI and SSDI. (ECF No. 11.) The Commissioner filed a Motion for an Order Affirming the Decision of the Commissioner. (ECF No. 13.) The Magistrate Judge issued an R&R recommending that Mr. Santa's motion be denied and the Commissioner's motion be granted. (ECF No. 14.) Mr. Santa objects to the R&R. (ECF No. 16.) The Commissioner has not filed anything in response to the R&R or to Mr. Santa's objection.

**STANDARD OF REVIEW**

Under 28 U.S.C. § 636(b)(1), this Court must "make a de novo determination of those portions of the [R&R] to which objection is made." *See also Seavey v. Barnhart*, 276 F.3d 1, 7 (1st Cir. 2001). This Court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1).

Review of a final decision of the Commissioner is authorized by 42 U.S.C. § 405(g) and § 1383(c)(3). *Abdus-Sabur v. Callahan*, No. 98-2242, 1999 WL 551133, at *1 (1st Cir. July 27,

1999). Section 1383(c)(3) explains that "[t]he final determination of the Commissioner . . . shall be subject to judicial review as provided in section 405(g)." Section 405(g) provides federal district courts with the "power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." It also explains that the Commissioner's findings "as to any fact, if supported by substantial evidence, shall be conclusive." *Id.* Conversely, the ALJ's findings of fact "are not conclusive when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts." *Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999).

**ANALYSIS**

Mr. Santa objects to the Magistrate Judge's recommended findings in the R&R that the ALJ did not err in his evaluations of Mr. Santa's three treating healthcare providers. (ECF No. 16.) As summarized above, three separate treating sources, namely Dr. Rich, Ms. Stockwood, and Dr. Nijhawan, rendered opinions that Mr. Santa suffers non-exertional restrictions inconsistent with substantial gainful activity. (Tr. 274-76, 294-99, 549-552, 642-43.)

> Regarding these treating source opinions, the ALJ stated:
>
> Generally, more weight is give[n] to the opinions of treating sources, even "controlling weight," if they are well supported by medically acceptable clinical and laboratory diagnostic techniques and <u>not inconsistent</u> with other substantial evidence (20 CFR 416.927(d)2). The Commissioner is responsible for making the determination about whether an individual meets the statutory definition of "disability" and a statement by a medical source that an individual is "disabled" or "unable to work" does not mean that he/she will be found disabled (20 CFR 416.927 d and e). Here the medical evidence shows that the claimant's condition has improved with medication. *The undersigned has considered the treating source opinions and finds that the state agency assessment is more consistent with the claimant's level of functioning based on substantial evidence.*

5

(Tr. 18-19 (latter emphasis added).) The ALJ never articulated the "substantial evidence" upon which he relied to reject the treating sources' opinions.

The basis for the ALJ's rejection of the three treating sources is his finding that two of the treating heath care providers noted that Mr. Santa's conditions "improved with medication." (Tr. 18.) The factual underpinnings of this finding are the records of Dr. Rich and Ms. Stockwood indicating that Mr. Santa "stabilized with medications." *Id.* But a review of the entire record shows that the ALJ's reliance on these notations is misplaced and not consistent with substantial evidence in the record as a whole. Both Dr. Rich and Ms. Stockwood noted that the medication "stabilized"[1] Mr. Santa, but they proceeded to opine and document Mr. Santa's continued, post-medication severe disabilities. (Tr. 549-52, 622-28.) The ALJ's reliance on these specific entries as a reason to discredit these two treating sources was clearly erroneous because the opinions of these treating providers are "not inconsistent with other substantial evidence."

Moreover, the ALJ's assertion that Mr. Santa has improved with medication appears to be in error and not based on the complete record. In support of his position, the ALJ cites a note from an office visit in June of 2009 where Mr. Santa reported "improvement in symptoms."[2] (Tr. 17.) This specific visit may very well mark a marginal improvement in his condition: in April of 2009 he was diagnosed with a GAF of 47 and in June of 2009 his GAF was raised to 50. (Tr. 574, 606.) However, a GAF of 50 is still indicative of severe psychological difficulties

---

[1] "Stable" is defined simply as "Steady; not varying; resistant to change." Stedman's Medical Dictionary 1817 (28th ed. 2006). The term does not mean "cured" or "eliminates the disability" as the ALJ's opinion seems to imply.

[2] It appears that the ALJ was referring to a report from nurse specialist Terri Belanger. (Tr. 606.)

inconsistent with work activity. This is part of the ALJ's line of reasoning for rejecting the opinion of Alix Stockwood, LICSW, and it is in error. (Tr. 17.)

Regarding Dr. Nijhawan, the ALJ noted that his records indicate that Mr. Santa "had improved and stabilized." (Tr. 18.) The ALJ references Exhibit 11F, but this Court's review of that exhibit does not reveal any such language. (Tr. 18, 291-93.) Exhibit 11F indicates that Mr. Santa was suffering from symptoms including significant fatigue, depression, anxiety, headaches, and muscle pain. (Tr. 291-92.) Exhibit 11F also states that Mr. Santa was having difficulties with daily activities, social functioning, and "moderately severe limitations in overall occupational functioning." (Tr. 291-92.) Further, Dr. Nijhawan's other records show that Mr. Santa was suffering similar symptoms. (Tr. 274-76.) It appears, therefore, that the ALJ's basis for discrediting treating physician Dr. Nijhawan also was erroneous.

Finally, the ALJ rejected Dr. Davis's evaluation in part because she examined him at the request of his attorney for purposes of his disability application. (Tr. 18.) The ALJ does not, however, discount the opinions of the state agency consultants, opinions also rendered for purposes of evaluating Mr. Santa's disability application. His rejection of Dr. Davis' evaluation for this reason is therefore in error.

Under 20 C.F.R. § 404.1527(c)(2), "a treating source's opinion on the question of the severity of an impairment will be given controlling weight so long as it 'is well-supported by medically acceptable clinical and laboratory diagnostics techniques and is not inconsistent with the other substantial evidence in [the] record.'" *Polanco-Quinones v. Astrue*, 477 Fed.Appx. 745, 746 (1st Cir. 2012) (quoting 20 C.F.R. § 404.1527(c)(2)).

Furthermore, Social Security Ruling 96-2p(6) (the "Ruling") provides that "[i]f a treating source's medical opinion is well-supported and not inconsistent with the other substantial

evidence in the case record, it must be given controlling weight; i.e., it must be adopted." 1996 WL 374188 (July 2, 1996). The Ruling's Policy Interpretation further states "that a finding that a treating source medical opinion . . . is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to 'controlling weight,' not that the opinion should be rejected." *Id.* at *4. It explains that "[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 CFR 404.1527 and 416.927." *Id.* And it notes that "[i]n many cases, a treating source's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight." *Id.*

After a review of the entire record, this Court finds that the ALJ's reasoning was erroneous and the ALJ's rationale for disregarding the opinion of the three treating healthcare providers was deficient. The ALJ failed to evaluate the opinions of Mr. Santa's treating sources in accordance with the applicable regulations. *See, e.g.*, 20 C.F.R. § 416.927(c). The ALJ did not have good cause to give "little weight" to the treating healthcare providers' opinions on Mr. Santa's condition and limitations; and he offered neither an explanation nor substantial record evidence for his belief that there was evidence that claimant showed considerable improvement. *See* 20 C.F.R. § 404.1527(c); *see also Johnson v. Astrue*, 597 F.3d 409, 411 (1st Cir. 2010); *Soto-Cedeño v. Astrue*, 380 Fed.Appx. 1, 2-3 (1st Cir. 2010) ("ALJ did not give supportable reasons for rejecting [treating doctor's] opinion"). The Magistrate Judge erred by affirming the ALJ's disregard for the opinions of the treating healthcare providers.

This Court finds that the opinions of Mr. Santa's treating sources are well-supported by the medical evidence and should have been considered accordingly by the ALJ. A review of the entire record reveals that the ALJ's explanation for the rejection of those opinions has no basis in

8

fact. The ALJ did not follow the regulations' directives of affording the treating sources' opinions controlling weight and he did not demonstrate that inconsistent evidence was substantial. The treating sources were clearly the sources "most able to provide a detailed, longitudinal picture of [Mr. Santa's] medical impairment(s) and [they] bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone." 20 C.F.R. § 404.1527(c)(2).

The First Circuit has stated that courts should ensure "a just outcome" in Social Security disability claims. *Pelletier v. Secretary*, 525 F.2d 158, 161 (1st Cir. 1975). "[T]he Social Security Act is remedial legislation to be construed liberally to achieve its purpose of easing the insecurity of life." *Rodriquez v. Celebrezze*, 349 F.2d 494, 496 (1st Cir. 1965) (citing *Page v. Celebrezze*, 311 F.2d 757 (5th Cir. 1963)).

Here, the decision of the ALJ was not supported by substantial evidence for the reasons stated above. Further, the rationale for failing to afford the treating sources' opinions the appropriate weight has no basis in fact and therefore was in error. This Court, pursuant to its authority in 42 U.S.C. §405(g), reverses the ALJ's decision.

## CONCLUSION

After a review of the entire record and the papers in this case, this Court rejects the R&R (ECF No. 14), GRANTS the Motion to Reverse (ECF No. 11), and DENIES the Motion to Affirm. (ECF No. 13.)

IT IS SO ORDERED.

/s/ John J. McConnell, Jr.
John J. McConnell, Jr.
United States District Judge

February 19, 2013